[Cite as *State v. Freeman*, 2014-Ohio-1013.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 12 MA 112 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| GARY G. FREEMAN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 11 CR 770

JUDGMENT:      Affirmed in Part. Reversed in Part. Limited Remand.

APPEARANCES:
For Plaintiff-Appellee:      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:      Atty. Lori A. Curd
Director Legal Clinic
Mr. Justin Downing,
Certified Legal Intern
University of Akron School of Law
Office of Appellate Review
Akron, Ohio 44325-2901

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: March 14, 2014

WAITE, J.

{¶1}   Appellant Gary G. Freeman appeals his Mahoning County Common Pleas Court conviction on charges of attempted rape and kidnapping.  Appellant forced his victim, Twanda Tarver, into a car in the early hours of the morning as she left a nightclub in Youngstown.  Appellant held her in the car in fear for her life for more than three hours.  Appellant then parked in a secluded location in Warren, shocked her with a stun gun and attempted to rape her, before ordering her out of the car and continuing to physically assault her.  Three of Appellant's four assignments of error, which challenge the weight and sufficiency of the evidence and seek to merge his rape and kidnapping convictions, are without merit and are overruled.  Appellant's fourth assignment of error concerning the omission of postrelease control information from his sentencing hearing has merit.  Appellant's convictions and sentence are affirmed, however, the matter is remanded for the limited purpose of allowing the trial court to inform Appellant of mandatory postrelease control sanctions.

Factual and Procedural History

{¶2}   During the early morning hours of June 10, 2012, in the confusion created as a nightclub closed and police responded to a fight, Appellant approached his victim from behind, placed an object against her back, and directed her to get into his car.  He proceeded to speed along Market St. as she begged him not to kill her and told him she would pay him to let her go.  At trial, Ms. Tarver stated that she was in fear for her life and complied with Appellant out of that fear.  She did not know where Appellant was taking her and was unable to recall in detail what occurred in the hours after she was forced into the car.  Ms. Tarver did testify that Appellant

eventually stopped the car in a weedy, overgrown, area away from any houses, turned off the car lights, shocked her with a stun gun and ordered her to remove her pants. When she complied, Appellant licked her vagina twice before instructing her to get out of the car. As she exited the car partially clothed, Appellant then attempted to force her to the ground using the stun gun, stating "Bitch, fall. Why won't you fall?" (Tr. Vol. I, p. 116.)

{¶3} Because she was still upright, Appellant punched her in the face until she fell to the ground. He continued to kick, punch and choke her, and pulled her hair and clothing as she lay on the ground. At some point, Appellant asked Ms. Tarver where her money was located. She told him that it dropped when he pulled her shirt up. While he looked for the money, she was able to rise and pull on her pants. Then she ran away from Appellant, leaving her underwear and shoes behind. Appellant got into the car to go after her, shouting after her "Bitch, you better run because I'm about to run you over; I'm going to kill you." (Tr. Vol. I, p. 118.) Another car turned onto the street at this point, and Appellant, apparently seeing the headlights, put his car in reverse and drove off. Ms. Tarver continued running until she reached a nearby house. The homeowner allowed her to call the police. She had to request that the homeowner tell her where they were located. Prior to this conversation, Ms. Tarver did not know where she was or that Appellant had taken her out of Mahoning County and into Warren, in Trumbull County.

{¶4} Ms. Tarver testified that she had been drinking that night at the nightclub before it closed, but that she felt sober when Appellant approached her.

Ms. Tarver also said that she had had a brief interaction with Appellant at the club before it closed, where she told him that she had a boyfriend so he would leave her alone. She also believed that Appellant forced her to ingest additional alcohol while she was in the car. While he held her in the car Appellant also struck Ms. Tarver with a beer can and poured its contents over her. After Ms. Tarver escaped and called the police, she was treated at Trumbull Memorial Hospital for various injuries.

{¶5} The treating physician noted that she smelled of alcohol; blood was drawn when she was examined and her blood alcohol level at the time of treatment was 0.06%. Ms. Tarver was treated for numerous bruises and contusions. She sustained nerve damage in her neck and a broken nose due to Appellant's attack. According to her testimony, the nerve damage resulted from Appellant's repeated use of the stun gun. At trial, the jury saw photos of the injuries inflicted on Ms. Tarver and heard testimony describing her appearance and emotional state when police responded to the 911 call. The Warren officers who responded to her call recovered flip flops, underwear, and a beer can from the area Ms. Tarver described as the scene of the attack. The Youngstown police later recovered the car used by Appellant, which had been stolen. When the car was recovered it contained multiple liquor bottles, beer cans, purses, a stun gun, and papers bearing Appellant's name.

{¶6} Ms. Tarver's ordeal resulted in a four count indictment that charged Appellant with two counts of kidnapping, one count of attempted rape, and one count of receiving stolen property. Appellant's Crim.R. 29 motion for acquittal was denied at the close of the state's case. All four counts were submitted to the jury. Appellant

was acquitted on one of the two kidnapping charges, a violation of R.C. 2905.01(A)(3), kidnapping for the purpose of terrorizing or inflicting serious physical harm on the victim or another. He was convicted on the remaining counts, attempted rape and kidnapping in violation of R.C. 2905.01(A)(4), for the purpose of engaging in sexual activity against the victim's will, and receiving stolen property. His timely appeal was filed from the trial court's entry of his sentence.

Argument and Law

ASSIGNMENT OF ERROR NO. 1

APPELLANT FREEMAN'S KIDNAPPING CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE CONSTITUTION OF THE STATE OF OHIO, ARTICLE IV, SECTION 3.

ASSIGNMENT OF ERROR NO. 2

APPELLANT FREEMAN'S ATTEMPTED RAPE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE CONSTITUTION OF THE STATE OF OHIO, ARTICLE IV, SECTION 3.

{¶7} Appellant's first and second assignments of error both address the weight of the evidence supporting his convictions. Because both assignments involve the same standard of review and applicable law they will be considered together.

**{¶8}** On review as to whether a criminal judgment is against the manifest weight of the evidence, this Court acts as a "thirteenth juror" to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The verdict is not against the weight of the evidence when there is evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

**{¶9}** The "'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.""" (Internal citations and emphasis omitted) *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, *supra*, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶10}** Appellant was convicted on one count of kidnapping, a violation of R.C. 2905.01(A)(4), which provides:

No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will

This offense is a first degree felony. R.C. 2907.01 defines sexual activity as either sexual contact, which includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person," or sexual conduct, which includes "vaginal intercourse between a male and female, anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without the privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A), (B), and (C).

{¶11} Appellant was also convicted of attempted rape, a violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force," and R.C. 2923.02, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Attempted rape is a second degree felony. Appellant's third conviction was for

receiving stolen property in relation to the vehicle he used to abduct Ms. Tarver, which was owned by a third party and recovered after the attack.

{¶12} Appellant has neglected to identify any specific part of the transcript that would support the alleged defect in the state's evidence. Nevertheless, a review of the transcript reflects that the state presented testimony that Appellant approached Ms. Tarver from behind and compelled her to get into a stolen car. Appellant then drove with Ms. Tarver against her will, begging him not to kill her, at a high rate of speed, telling her when she attempted to get out of the car: "the only way you're getting out of this car is if you jump out." (Tr. Vol. II, p. 224.) Appellant kept Ms. Tarver in the moving car for approximately three hours, before parking in a secluded location: "it looked like it used to be a neighborhood that had houses there and they had been torn down, and grass had grown over. And the grass was really high on both sides of the street, very high, so high that if a vehicle was stopped there, if you were on one of the other streets, the side streets, you wouldn't be able to see that vehicle * * * maybe five, six feet." (Tr. Vol. II, pp. 225-226.)

{¶13} Appellant proceeded to attack Ms. Tarver with a stun gun, force her to remove her pants and underwear and attempted an oral sexual act. Appellant stopped, ordered his victim out of the car, forced her to the ground by use of the stun gun and, when that failed, by a punch to the face. He kicked and punched her as she lay on the ground. Appellant was distracted briefly, which allowed Ms. Tarver to escape. He got into the car and came after her, until he was interrupted by another vehicle at the scene. Appellant backed away and drove off, allowing Ms. Tarver to

run down the block to an occupied house where she and the homeowner called 911. Those facts provide probative evidence on each element of the offenses charged.

{¶14} Ms. Tarver's testimony and that of the various officers who responded to the call and interacted with her not only that night, but in the following days, and that of the hospital staff, is consistent. All of this testimony also provides substantive evidence on each element of the offenses charged. At trial, defense counsel pointedly questioned Ms. Tarver about her alcohol consumption and prescription drug use on the night in question. Defense counsel emphasized the fact that the witness did not have perfectly sequential or complete memories of the night. Neither defense counsel's pointed concerns, nor arguments raised on appeal, contradict the relevant portions of Ms. Tarver's testimony that she was taken against her will, transported and brutally attacked several times that night.

{¶15} The jury returned a guilty verdict on one of the two kidnapping charges included in the indictment and acquitted Appellant on the alternative charge. During oral argument, Appellant's counsel emphasized that one of the hospital staff indicated that she remembered Ms. Tarver saying that she got into the car initially because she believed Appellant would take her home. Counsel argues that the difference between the staff member's recollection of what she was told and Ms. Tarver's direct testimony is a defect in the state's case necessitating reversal. This argument overlooks two essential points: first, the elements of kidnapping include "force, threat, or deception." Thus, whether Appellant got her in the car by lying to her or by physical force, he would still be charged with kidnapping. Second, the jury

is entitled to determine the credibility of each witness's recollection. There is no indication in this record that the jury gave undue weight to any single piece of the evidence. There is nothing in this record that would support a conclusion that the jury lost its way, and we defer to the jury's determination of credibility. *Barnhardt* and *Thompkins, supra.* Appellant's first and second assignments of error are without merit and are overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT FREEMAN TO CONSECUTIVE PRISON TERMS FOR KIDNAPPING, AND ATTEMPTED RAPE IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS THESE CRIMES ARE ALLIED OFFENSES UNDER R.C.2941.25.

{¶16} The law pertaining to allied offenses in Ohio is continually evolving. However, as we have recently discussed at length in *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147 and *State v. Gilbert*, 7th Dist. No. 08 MA 206, 2012-Ohio-1165, the Supreme Court's plurality decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, is the standard applied by the majority of Ohio appellate courts. "Allied offenses of similar import" are defined by R.C. 2941.25, which provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Although the statute has remained unchanged by the legislature since its passage in 1972 (effective January 1, 1974), Ohio jurisprudence shifted from a contextual analysis of the facts of each individual case to an objective comparison of the statutory elements of each offense, before this most recent return, in *Johnson*, to a fact-driven analysis. *Johnson*, *supra.*

**{¶17}** Pursuant to *Johnson*, a trial or reviewing court is to determine whether the "offenses are allied offenses of similar import" by applying two stages of analysis. *Johnson, supra*, ¶48. First, we are to determine "whether the offenses were committed by the same conduct," and "whether it is possible to commit one offense *and* commit the other with the same conduct" but not "whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶47-48. If the answer to both questions is "yes," and the "offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id.* at ¶48. If, on the other hand, "the court determines that the commission of one offense will *never*

result in the commission of the other," then the offenses are not allied and do not merge.  (Emphasis sic.)  *Id.* at ¶51.

**{¶18}** The analysis does not stop there, however.  If the court identifies offenses of similar import, it must consider whether the offenses were committed separately, or if the defendant had separate animus for each offense.  *Id.* at ¶51.  If the offenses were committed separately, or if there was separate animus for each, they remain separate offenses for sentencing purposes.  *Id.*  When deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus.  *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, syllabus.

**{¶19}** Because the allied offenses test is now both case and fact specific, it "may result in varying results for the same set of offenses in different cases." *Johnson* at ¶52.  An "appellate court reviews the legal conclusion of whether the offenses are allied using a de novo standard, but because the trial judge is the fact-finder, the trial court's determinations as to the facts are not reviewable de novo." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶30.  "In fact, the appellate court should defer to the factual findings of the trial court, provided they are supported by some competent, credible evidence."  *Id.*

**{¶20}** Appellant was convicted on two counts: one count of attempted rape, a violation of R.C. 2907.02(A)(2); one count of kidnapping, a violation of R.C.

2905.01(A)(2) and (A)(4). Appellant's challenge to his separate sentences misinterprets the state of the law with regard to rape and kidnapping. While all rapes inherently involve a restraint on the liberty of another, and where the act of rape is the sole unlawful exercise of restraint on the physical liberty of another person, the law is clear that any accompanying kidnapping charge should merge with the rape charge. *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). Although Appellant is correct to the extent that courts have held that every instance of rape includes a kidnapping, Appellant's argument that in every case the rape and kidnapping charges must merge ignores the relevant law in *Logan* and *Johnson*, and instead relies entirely on *State v. Donald*, 57 Ohio St.2d 73, 386 N.E.2d 1341 (1979), which predated *Logan*, and was substantively altered by the merger analysis prescribed by the Supreme Court in *Logan* and again, more recently in *Johnson.*

{¶21} The *Logan* Court examined the law of merger as it regards kidnapping in various states before concluding "we first note our disagreement with those states which require movement of the victim to sustain a conviction for kidnapping * * * [w]e believe that prolonged restraint without asportation may be as penologically significant as substantial asportation and, under certain circumstances, will support a conviction for kidnapping as a separate act or animus from that of rape." *Id.* at 134-135. The *Logan* Court emphasized that "[s]ecret confinement, such as in an abandoned building or nontrafficked area, without the showing of any substantial asportation, may, in a given instance, also signify a separate animus and support a conviction for kidnapping apart from the commission of an underlying offense." *Id.* at

135. According to the *Logan* Court, the "primary issue * * * is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." *Id.* at 135.

{¶22} The record before the trial court in this instance discloses a kidnapping, which involved Appellant surprising his victim from behind, holding an object to her back, forcing her into a car, restraining her within the car for over three hours, and transporting her across county lines against her will and in fear for her life. For purposes of R.C. 2905.01(A)(4) which defines kidnapping, Appellant kidnapped Ms. Tarver when he forced her into the car "by force, threat, or deception." The elements of the actual kidnapping were complete when Ms. Tarver entered the car against her will. Appellant committed attempted rape only hours later and after numerous intervening acts, many of which could have resulted in separate charges or additional counts of kidnapping. Appellant also subsequently forced his partially unclothed victim from the car in a secluded area and physically threw her to the ground, again, with an apparent sexual motive. It was only when Appellant became distracted by the thought of the victim's money that she was able to escape and run for help. Appellant's attempt to rape Ms. Tarver may have facilitated the jury's determination that Appellant kidnapped the victim with a sexual purpose, however, the attempted rape was not itself sufficient or necessary to sustain Appellant's kidnapping conviction. The sexual purpose element of kidnapping is satisfied by sexual contact as well as sexual conduct. Appellant's attempted rape was unquestionably sexual contact. In this record, removing Ms. Tarver's underwear, pulling her shirt up, and

touching her breasts also establish a sexual purpose. Such assaults occurred both inside the vehicle and after the victim's forced removal. Moreover, this record discloses exactly the "substantial asportation," "secret confinement" and "prolonged restraint" that the *Logan* Court indicates as having "significance independent of the other offense." *Id.* at 134-135. Appellant's actions resulted in a complete removal of Ms. Tarver against her will and after prolonged restraint to the type of location the *Logan* Court specifically cited would support a separate kidnapping charge, even in the absence of this substantial relocation. *Id.* at 135. Again, the facts of this case tend to support several kidnapping counts. Certainly, the factual circumstances in this case support the trial court's conclusion that Appellant's conviction for kidnapping was not an allied offense of the attempted rape. The trial court correctly applied the applicable law, and separate sentences for these offenses were lawful. *Johnson*, *supra*, ¶47 and *Logan*, *supra* 135. Appellant's third assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN FAILING TO NOTIFY APPELLANT FREEMAN OF A MANDATORY POST-RELEASE CONTROL TERM IN VIOLATION OF R.C. 2967.28(B)(1).

**{¶23}** Appellant contends, and the state readily concedes, that Appellant was not informed that he was subject to mandatory postrelease control as part of his sentence during his sentencing hearing. R.C. 2967.28(B)(1) governs sentencing and requires the trial court to impose a period of postrelease control and to inform

Appellant at sentencing. Clearly, Appellant is correct when he states that R.C. 2967.28(B)(1) requires the court to inform a defendant of the postrelease control mandatory period.

**{¶24}** Section R.C. 2929.19(B)(2)(c) that governs the information to be provided by the trial court at sentencing, and requires that the trial court:

> (c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a term imposed for any such offense that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. If a court imposes a sentence including a prison term of a type described in division (B)(2)(c) of this section on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(c) of this section that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under

division (B) of section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(c) of this section and failed to notify the offender pursuant to division (B)(2)(c) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

**{¶25}** "A sentence that does not include the statutorily mandated term of post release control is void, is not precluded from appellate review by principles of res judicata, and may be reviewed at any time, on direct appeal or by collateral attack." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, paragraph one of the syllabus.

**{¶26}** While the trial court did include mandatory postrelease control information in his written sentencing entry, it is uncontested that Appellant was not verbally informed of these provisions at his sentencing hearing. After July 11, 2006, pursuant to R.C. 2929.191, the trial court's omission of postrelease control information during the sentencing hearing may be remedied as follows:

On and after July 11, 2006, a court that wishes to prepare and issue a correction to a judgment of conviction of a type described in division (A)(1) or (B)(1) of this section shall not issue the correction until after the court has conducted a hearing in accordance with this division. Before a court holds a hearing pursuant to this division, the court shall provide notice of the date, time, place, and purpose of the hearing to

the offender who is the subject of the hearing, the prosecuting attorney of the county, and the department of rehabilitation and correction. The offender has the right to be physically present at the hearing, except that, upon the court's own motion or the motion of the offender or the prosecuting attorney, the court may permit the offender to appear at the hearing by video conferencing equipment if available and compatible. An appearance by video conferencing equipment pursuant to this division has the same force and effect as if the offender were physically present at the hearing. At the hearing, the offender and the prosecuting attorney may make a statement as to whether the court should issue a correction to the judgment of conviction.

R.C. 2929.191(C). A trial court may correct its omission to inform a defendant about postrelease control sanctions by complying with R.C. 2929.191 and issuing a corrected sentence. However, in cases like the one before us where no corrected entry is necessary, only a hearing is required. *State v. Adams*, 7th Dist. No. 11 MA 65, 2012-Ohio-432; *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434.

**{¶27}** Because the trial court did not verbally inform Appellant of mandatory postrelease control sanctions at sentencing, his fourth assignment of error has merit. Appellant is entitled to a new limited sentencing hearing during which the court will explain the mandatory period of postrelease control included in his sentence. This hearing may be held in person or via video conferencing at the trial court's discretion and in compliance with the statute. Appellant's fourth assignment of error is

sustained, the matter is remanded to the trial court for the limited purpose of holding a sentencing hearing to address Appellant in regards to his postrelease control sanctions.

## Conclusion

**{¶28}** Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Based on this record, Appellant's rape and kidnapping convictions are not allied offenses and do not merge. Appellant's first, second and third assignments of error are without merit and are overruled. Appellant's fourth assignment has merit. The judgment of the trial court is affirmed, but the matter is hereby remanded for the limited purpose of a sentencing hearing in order to inform Appellant of his postrelease control sanctions.

Donofrio, J., concurs.

DeGenaro, P.J., concurs in judgment only; see concurring in judgment only opinion.

DeGenaro, P.J., concurring in judgment only.

{¶29} I cannot concur with the majority opinion because the analysis of the facts at ¶22 strains merger jurisprudence with respect to kidnapping and rape offenses. The facts have been strained and parsed in order to support the majority's suggestion that would have supported "separate charges or additional counts of kidnapping." This is a curious conclusion when juxtaposed against the jury's verdict here. Appellant was charged with two kidnapping offenses, and convicted of R.C. 2905.01(A)(4), kidnapping for the purpose of engaging in sexual activity against the victim's will; but acquitted of R.C. 2905.01(A)(3), kidnapping for the purpose of terrorizing or inflicting serious physical harm on the victim.

{¶30} And although not challenged on appeal, I also write separately because the majority nonetheless failed to clarify that venue was proper in this case and that the Mahoning County Common Pleas Court had jurisdiction over Appellant's attempted rape charge.

{¶31} "Venue relates to the right of a criminal defendant to be tried in the county in which the alleged offense occurred. Although venue is not an element of the charged offense, the prosecution has a burden of proving, beyond a reasonable doubt, that the offense happened in the county where the indictment was returned or that the defendant waived this right. Proper venue in any particular county is determined by examining the elements of the charged offense. If any element of the charged offense was committed in the county where the offense was tried, venue is proper." *State v. Harris*, 6th Dist. No. F-04-005, 2005-Ohio-1779, ¶18 (internal citations omitted); See also, Section 10, Article I, Ohio Constitution; R.C. 2901.12.

{¶32} Appellant abducted the victim in Mahoning County and drove for three hours with the victim in his vehicle and transported her across the county line into Trumbull County where the attempted rape occurred. Regarding venue, pertinent to this appeal, R.C. 2901.12 provides:

> (C) When the offense involved the * * * unlawful taking * * * of another, the offender may be tried in any jurisdiction from which * * * [the] victim was taken * * *

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim * * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective. * * *

(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.

*Id.*

**{¶33}** Appellant's course of criminal conduct commenced in Mahoning County where he abducted the victim and concluded in Trumbull County where he punched, kicked, choked and used a stun gun on the victim, and also attempted to rape her by licking her vagina. Majority Opinion, ¶2-3, 12-13. Elements of the kidnapping offenses occurred in Mahoning County, whereas all the elements of the attempted rape offense occurred in Trumbull County. The facts here are similar to those considered by the Third District in *State v. Lee*, 3rd Dist. No. 14-06-18, 2006-Ohio-6091, whose analysis is instructive here:

In the present case, Lee was charged with three counts of receiving stolen property in violation or R.C. 2913.51, and one count of engaging in a pattern of corrupt activity for the violations of R.C. 2913.51. Pursuant to R.C. 2901.12, any of the offenses could be tried in Union County if any one of their elements was committed in Union County. Additionally, if these offenses were committed as part of a course of criminal conduct, all could be tried in any jurisdiction where

any element of any of the offenses occurred. Therefore, in order to try Lee for the four offenses in Union County, the State had to demonstrate that these offenses were part of a course of criminal conduct and that at least one element of any one of these offenses occurred in Union County, Ohio. See *State v. Edwards, supra.*

The evidence presented at trial established that Delaney and Hendrickson received crack cocaine from Lee each time they brought a vehicle stolen from Union County to Lee's residence in Franklin County. The commission of these offenses was the basis for Count IV of the indictment: engaging in a pattern of corrupt activity, which requires two or more incidents of corrupt activity. See R.C. 2923.32; R.C. 2923.31(E). Therefore, these offenses were inextricably linked together.

*Id.*, ¶16-17.

**{¶34}** Pursuant to R.C. 2901.12(C) and (H), Appellant's case was properly venued in Mahoning County and the common pleas court from that county had jurisdiction over not only the kidnapping charge but also the attempted rape charge, even though that offense was committed in another county. As part of a course of criminal conduct, Appellant kidnapped and attempted to rape the same victim as part of the same transaction or chain of events along his line of travel in this state. R.C. 2901.12(H)(1), (3) and (6). Thus, the Mahoning County Common Pleas Court still has jurisdiction over the attempted rape offense, even though it took place in Trumbull County.